**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**

**Plaintiff, Pro Se**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia, PA 19406** | ) | |
| Plaintiff, | ) | **Civil Action** |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| **MERCHANT FLOW FINANCIAL** | ) | |
| **CORPORATION** | ) | |
| **277 Fairfield Road Suite 309,** | ) | |
| **Fairfield, NJ 07004** | ) | |
| | ) | |
| **CONROY WILLIAMSON, individually and as** | ) | |
| **Chief Executive Officer of Merchant Flow** | ) | |
| **40 Tulane Place,** | ) | |
| **Lincoln Park, NJ 07035** | ) | |
| Defendants | ) | **Jury Trial Demanded** |

**COMPLAINT:**

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing tortious activity of MERCHANT FLOW FINANCIAL CORPORATION (hereinafter "MERCHANT FLOW") and CONROY WILLIAMSON (hereinafter "WILLIAMSON"), collectively "defendants", in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") using an automatic telephone dialing system ("ATDS

1

calls") in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.   Introduction

1. Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff brings this action to challenge Defendants' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Defendants' and Defendants' agents' illegal telephone solicitations by which they market their products and services by calling consumers whose numbers are listed on the National Do-Not-Call Registry utilizing automated dialing equipment, and Defendants' failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

5. Plaintiff alleges that Defendants placed several telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising business loan and/or "merchant cash advance" services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6. Plaintiff never consented to receive any of these calls.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

7.      All of the claims asserted herein arise out of Defendants' illegal telephone solicitation campaign and are a common fact pattern.

## II.     Jurisdiction and Venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9.      Venue is proper in this court in that Defendants conduct business in and reside in New Jersey.

## III.     Parties

10.     Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11.     Defendant MERCHANT FLOW FINANCIAL CORPORATION ("MERCHANT FLOW") is a New Jersey corporation with its principal place of business at 277 Fairfield Road Suite 309, Fairfield, NJ 07004. MERCHANT FLOW transacts business in, *inter alia*, Montgomery County, Pennsylvania. MERCHANT FLOW is not registered to do business in the Commonwealth of Pennsylvania, however, MERCHANT FLOW markets and sells, *inter alia*, business loan and/or merchant cash advance products and services to people in Pennsylvania and nationwide.

12.     Defendant CONROY WILLIAMSON is an adult individual residing in the State of New Jersey at the address of 40 Tulane Place, Lincoln Park, NJ 07035. It is believed, and therefore averred, that Mr. Williamson is the primary owner and/or CEO of MERCHANT FLOW. Mr. Williamson is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in MERCHANT FLOW's name. Such

3

tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, New Jersey, and nationwide.

13. At all times herein mentioned, MERCHANT FLOW and WILLIAMSON (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

### **Background**
### **The Telephone Consumer Protection Act**

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do-Not-Call Registry

17.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

18.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

19.     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

20.     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

21.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"
>
> *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.**

22.     Under the TCPA, an individual such as Mr. Williamson may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 227 of the TCPA, which reads, *inter alia*:

[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 227 (emphasis added).

23.     When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, *e.g.*, *Jackson v. Five Star Catering, Inc., v. Beason,* 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

24.     Defendant Mr. Williamson is personally liable under the "participation theory" of liability because he is the CEO and/or Principal owner of MERCHANT FLOW, knew of MERCHANT FLOW's violations, and directed employees and/or agents of MERCHANT FLOW to continue making those violations.

25.     This is because Defendant Mr. Williamson authorized and oversaw each of MERCHANT FLOW's telemarketing processes and calls which were made on behalf of MERCHANT FLOW.

26. Furthermore, Defendant Mr. Williamson is also personally liable because he was responsible for ensuring MERCHANT FLOW's agents and/or employees' TCPA compliance.

### IV. Factual Allegations

27. MERCHANT FLOW provides loans to companies.

28. MERCHANT FLOW uses telemarketing to promote their products and services.

29. Defendants' telemarketing efforts also includes the use of automated dialing equipment to send automated calls through third parties and their agents, as well as calling cell phone numbers that are listed on the National Do-Not-Call registry for more than 31 days prior to the calls.

30. At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

31. At all times material herein, Plaintiff received all of the calls complained of in this case on his cellular telephone number, (484) 626-3942. This is the only telephone number Plaintiff owns.

32. Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

33. On May 21, 2018 at 2:16 PM, Plaintiff received a call which displayed on Plaintiff's caller identification as (484) 626-9177.

34. Plaintiff notes that this call was made using caller ID spoofing. Caller ID spoofing can be described as when a caller uses automated technology to display false caller identification information on the recipient's telephone. Such spoofing is done to confuse the called party into

believing that someone locally is calling. In this particular instance, the caller ID spoofing showed the same telephone area code "484" and prefix "626" as Plaintiff's cell phone number.

35. The telemarketing call began with a distinctive click and pause after the Plaintiff answered.

36. In fact, while waiting for a human being to arrive on the line, the Plaintiff repeatedly said "hello" into his telephone with no response.

37. Plaintiff then heard a "bloop" sound and a machine noise, which is indicative of a predictive dialer transferring Plaintiff to a live human being. These facts demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

38. When a human being arrived on the phone line, the Plaintiff received a scripted sales pitch about business funding.

39. The individual who Plaintiff spoke with was Indian. This unknown Indian caller said he was with a "private lending bank".

40. The call was then transferred to "David W. Oliver, Jr.", who attempted to sell the Plaintiff Merchant Flow's business loan and/or merchant cash advance services.

41. As a result of the automated call, David W. Oliver, Jr., doliver@merchantflow.com, contacted the Plaintiff by e-mail attempting to get the Plaintiff to purchase Merchant Flow's loan services.

42. On May 22, 2018 at 2:38 PM, Plaintiff received a missed call from Merchant Flow from the telephone number 973-244-0200. The caller, David W. Oliver, Jr., left a message on Plaintiff's voicemail trying to get Plaintiff to purchase Merchant Flow's loan services.

43. On May 23, 2018 at 11:39 AM, Plaintiff received a call from 973-244-0200. Plaintiff answered but the call unexpectedly disconnected.

44. On May 23, 2018 at 11:39 AM, just seconds later, Plaintiff received another call from 973-244-0200. Plaintiff said "Hello," and then the call was disconnected. Plaintiff suspects that this call was placed using an Automatic Telephone Dialing System because there was nobody on the line to be connected to and because there was machine noise in the background, as well as the tremendously short time for a call back. Because of their automated nature, such systems often exhibit this abnormal behavior.

45. On May 25. 2018 at 3:28 PM, Plaintiff received another automated telemarketing call from Merchant Flow at 973-244-0200. Plaintiff did not answer this call.

46. On May 31, 2018 at 5:45 PM, Plaintiff received another automated telemarketing call from Merchant Flow at 973-244-0200. Plaintiff attempted to answer but once again, the call unexpectedly disconnected after a few seconds.

47. Within the next minute, Plaintiff receive seven (7) identical automated telemarketing calls from Merchant Flow at 973-244-0200. Each time, the call would unexpectedly disconnect when Plaintiff would answer. Plaintiff suspects that these calls were placed using an Automatic Telephone Dialing System because there was nobody on the line to be connected to and because there was machine noise in the background, as well as the fact that so many of these calls were occurring in the span of two minutes. Because of their automated nature, such systems often exhibit this abnormal behavior.

48. At May 31, 2018 at 5:47 PM, Plaintiff received another telemarketing call from 646-784-8647. Plaintiff answered and was connected with "David Oliver" briefly, but Plaintiff told the

10

caller he was not interested and hung up once he realized it was a representative of Merchant Flow on the line.

49. Prior to these unsolicited calls, the Plaintiff has never done any business with MERCHANT FLOW and Plaintiff never provided one or more of Defendants with his cellular telephone number.

50. Defendants did not have the Plaintiff's prior express written consent to make these calls.

51. In fact, before filing this lawsuit, the Plaintiff wrote to the defendants asking if they had his prior express written consent to make the calls, but defendants did not provide any evidence of consent.

52. Plaintiff also requested in his e-mail to receive a copy of the defendants' internal company Do-Not-Call policy.

53. Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite a written e-mail request and notice of Plaintiff's intent to file a formal claim.

54. Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

55. Pursuant to 47 CFR 64.1200(c)(2)(C), a telemarketer is required to maintain a "do not call list" of telephone numbers that the seller may not contact. Pursuant to 47 CRF 64.1200(d), a telemarketer must put a person's number on the do-not-call list if that person requests not to receive telemarketing calls made by or on behalf of that person or entity.

56. Defendants failed and/or refused to put Plaintiff's number on MERCHANT FLOW's internal company "Do-Not-Call list".

57. To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on National do-not-call rules, training personnel on National do-not-call rules, maintaining an internal do-not-call list, and accessing the National do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Defendants inquiring about the calls before filing this lawsuit.

58. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

59. Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal and residential purposes.

60. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

61. Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff, and woke him up in

the morning. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS call" Prohibition, 47 U.S.C. § 227 et seq.)

62. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

63. As a result of Defendants' and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

64. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS call" Prohibition, 47 U.S.C. § 227 et seq.)

65. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

66. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

67. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

68. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

69. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

70. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

71. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

73. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

74.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

75.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

76.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

77. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

78.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

79.     As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA

"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

80. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

81. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**WHEREFORE, Plaintiff prays for relief against defendants, as follows:**
**V.     Prayer for Relief**

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.
2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.
3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **$45,000** (Fourteen (14) counts each of "Sales call to a number registered on the National Do-Not-Call Registry", "ATDS call", and one count each of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;
5. Costs of suit herein incurred; and
6. All such other and further relief as the Court deems proper.

## VI. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 25, 2018

*James E Shelton*

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

## VERIFICATION

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: June 25, 2018

*James E Shelton*

JAMES EVERETT SHELTON