**Not For Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JAMES EVERETT SHELTON, *Plaintiff*, v. MERCHANT FLOW FINANCIAL CORPORATION, and CONROY WILLIAMSON, *Defendants*. | Civil Action No. 18-11294 (JMV) (SCM)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This matter comes before the Court on an unopposed motion for default judgment pursuant to Fed. R. Civ. P. 55(b)(2) by Plaintiff James Everett Shelton against Defendants Merchant Flow Financial Corporation ("Merchant Flow") and Conroy Williamson. D.E. 7. Plaintiff is seeking statutory damages under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, for a series of telephone calls placed to Plaintiff's personal cell phone. D.E. 1. The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## I. FACTS[1] AND PROCEDURAL HISTORY

Defendant Merchant Flow is a New Jersey corporation that markets and provides business loans and merchant cash advances to individuals and companies, with its principal place of business at 277 Fairfield Road, Fairfield, New Jersey. Compl. ¶ 11. Merchant Flow uses telemarketing to promote its products and services. *Id.* ¶ 28. Defendant Williamson is the primary owner and/or Chief Executive Officer of Merchant Flow and a resident of New Jersey. *Id.* ¶ 12. Plaintiff is a Pennsylvania resident. *Id.* ¶¶ 10, 30. Plaintiff pays for each incoming and outgoing call to and from his cell phone via an unlimited calling plan with T-Mobile. *Id.* ¶ 58, 59. In June 26, 2015, Plaintiff registered his personal cell phone number on the national Do-Not-Call registry ("DNC registry"). *Id.* ¶ 32. Plaintiff had not provided his telephone number to, or conducted any business with, Defendants prior to the events giving rise to this action. *Id.* ¶ 49. Defendant Merchant Flow's telephone calls to Plaintiff's cell phone serve as the basis for this action. *Id.* ¶ 5.

On May 21, 2018, at 2:16 p.m., Plaintiff received a telephone call from the number 484-626-9177. *Id.* ¶ 33. Plaintiff alleges that the call was placed using "caller ID spoofing," whereby a caller uses automated technology to display false caller identification information on the recipient's telephone to confuse the recipient, making him believe that someone is calling from a local number. *Id.* ¶ 34. Upon answering the call, Plaintiff heard a "click" and then a pause. *Id.* ¶ 35. Plaintiff responded by repeatedly saying "hello," but received no response. *Id.* ¶ 36. Plaintiff then heard what he described to be a "bloop" sound, which he alleges is indicative of an automatic telephone dialing system ("ATDS") transferring Plaintiff to a live human being. *Id.* ¶ 37.

---

[1] The facts are taken from Plaintiff's Complaint, D.E. 1 (hereinafter "Compl."), as well as Plaintiff's affidavit in support of his motion for default judgment, D.E. 7-1 (hereinafter "Pl. Aff."), and exhibits submitted in conjunction with Plaintiff's motion for default judgment, D.E. 7. *See Trustees of the Teamsters Pension Trust Fund of Phila. & Vicinity v. Riccelli Premium Produce, Inc.*, No. 10-3000, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

A person, who identified himself as being with a "private lending bank," then delivered a scripted sales pitch to Plaintiff about business funding. *Id.* ¶¶ 38-39. Plaintiff's call was then transferred to David W. Oliver, Jr., who further attempted to sell Merchant Flow's services to Plaintiff. *Id.* ¶ 40. After the call, Mr. Oliver contacted Plaintiff by e-mail further attempting to secure a Merchant Flow sale to Plaintiff. *Id.* ¶ 41.

On May 22, 2018, at 2:38 p.m., Plaintiff received a missed call and voice message from 973-244-0200. *Id.* ¶ 42. The voice message indicated that it was Mr. Oliver calling, again trying to sell Merchant Flow services to Plaintiff. *Id.* The next day, on May 23, 2018, at 11:39 a.m., Plaintiff received another call from 973-244-0200 and answered, but the call unexpectedly disconnected. *Id.* ¶ 43. The same number then called back seconds later, but when Plaintiff answered and said, "Hello," the call disconnected again. *Id.* ¶ 44.

On May 25, 2018, at 3:28 p.m., Plaintiff received a call from the same number, but Plaintiff did not answer the call. *Id.* ¶ 45. Plaintiff then received another call from the same number on May 31, 2018, at 5:45 p.m., but the call unexpectedly disconnected within a few seconds of Plaintiff answering. *Id.* ¶ 46. Within the next minute, Plaintiff received seven (7) calls from the same number. *Id.* ¶ 47. Each time Plaintiff answered, the call would disconnect. *Id.* Shortly thereafter, on May 31, 2018, at 5:47 p.m., Plaintiff received a call from 646-784-8647. *Id.* ¶ 48. Plaintiff answered the call and was briefly connected with Mr. Oliver. *Id.* ¶ 48. Plaintiff told Mr. Oliver that he was not interested in Merchant Flow's services and hung up. *Id.* The unsolicited telephone calls made to Plaintiff's personal cell phone totaled fourteen calls in eleven days. *Id.* ¶¶ 33-48.

On June 17, 2018, Plaintiff e-mailed Defendants requesting evidence of Plaintiff's consent to receive telemarking calls through an ATDS system. Pl. Aff. ¶ 7. Plaintiff also requested that

3

Defendants place his number on an internal do-not-call list and provide Plaintiff with a copy of Merchant Flow's do-not-call policy. *Id.* Defendants never responded and have not contacted Plaintiff since. *Id.*

Plaintiff filed his Complaint on June 25, 2018, alleging eight causes of action under the TCPA, 47 U.S.C. § 227 *et seq.*: (1) negligent violation of the "ATDS call" prohibition in § 227(b)(1)(A); (2) knowing and/or willful violation of the "ATDS call" prohibition in § 227(b)(1)(A); (3) negligent violation of the "Sales Call" prohibition in § 227(c)(3)(F); (4) knowing and/or willful violation of the "Sales Call" prohibition in § 227(c)(3)(F); (5) negligent violation of the "Do-Not-Call Policy" prohibition in 47 C.F.R. § 64.1200(d)(1); (6) knowing and/or willful violation of the "Do-Not-Call Policy" prohibition in 47 C.F.R. § 64.1200(d)(1); (7) negligent violation of the "Do-Not-Call List" requirement in 47 C.F.R. § 64.1200(d)(3); and (8) knowing and/or willful violation of the "Do-Not-Call List" requirement in 47 C.F.R. § 64.1200(d)(3). Compl. ¶¶ 62-81. Defendants were served on July 19, 2018. D.E. 4. Defendants' response was due on August 9, 2018; Defendants have not filed any response to date. *Id.* On August 15, 2018, the Clerk noted an Entry of Default on the docket. Plaintiff then moved for default judgment pursuant to Fed. R. Civ. P. 55(b)(2). D.E. 7.

## II. LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 55(b)(2) allows a court to enter default judgment against a party that fails to plead or otherwise defend claims made against it. Fed. R. Civ. P. 55(b)(2). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v.*

*Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

### B. Jurisdiction

When a default judgment is sought against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Plaintiff is suing under the TCPA, 47 U.S.C. § 227 *et seq.*, a law of the United States. Compl. ¶ 62-81. Therefore, the Court has subject matter jurisdiction.

The Court also has personal jurisdiction over Defendants. "[A]n individual's domicile, or home, constitutes the paradigmatic forum for the exercise of general jurisdiction." *Chanel, Inc.*, 133 F. Supp. 3d at 684 (internal quotation marks omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation and citation

omitted) (alteration in original). Here, Defendant Williamson is a resident of New Jersey. Compl. ¶ 12. Defendant Merchant Flow is incorporated in New Jersey and also maintains its principal place of business in New Jersey. *Id.* ¶ 11. Therefore, both Defendants are considered "at home" in New Jersey and the Court has general personal jurisdiction over both Defendants.

### C. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.,* 756 F.2d 14, 19 (3d Cir. 1985)). An individual defendant may be served by "delivering a copy of the summons and of the complaint to the individual personally[.]" Fed. R. Civ. P. 4(e). A defendant corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent [of the corporation]." Fed. R. Civ. P. 4(h). Here, Plaintiff properly served Defendant Williams as an individual on July 19, 2018, and as an officer and managing agent for Defendant Merchant Flow on that same date. Pl. Aff. ¶ 3, Ex. A-C. Therefore, the Court finds that service was proper.

### D. Sufficient Cause of Action

Next, the Court must determine whether the Complaint sufficiently pleads a cognizable cause of action. *Days Inns*, 2015 WL 4508413, at *1. The Court accepts all well-pleaded factual allegations in a complaint as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. Plaintiff sued Defendants pursuant to 47 U.S.C. § 227(b)(3), which provides a private right of action for violations of the TCPA, and pursuant to 47 U.S.C. § 227(c)(5), which provides a private right of action for violations of the Federal Communications Commission's ("FCC") regulations accompanying the TCPA. Compl. ¶¶ 62-81. Plaintiff seeks relief for violations of two sections of

the TPCA, 47 U.S.C. §§ 227(b)(1)(A) and 227(c)(3)(F), and two sections of the FCC's accompanying regulations, 47 C.F.R. §§ 64.1200(d)(1) and 64.1200(d)(3). *Id.*

The TCPA "bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations," which are now codified at 47 C.F.R. § 64.1200 *et seq. Id.* Section 227(b)(3) of the TCPA provides "for civil actions by private parties seeking redress for violations of the TCPA" and Section 227(c)(5) provides for civil actions by private parties seeking redress for violations of "the Commission's implementing regulations." *Id.* at 374-75. "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) (citing *Mims*, 565 U.S. at 370-71). Congress had received "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes." *Mims*, 565 U.S. at 370-71 (2012). Therefore, "Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls." *Id.* at 371.

1. **Defendant Williamson's Individual Liability**

Plaintiff asserts his TCPA claims against Defendant Merchant Flow and Defendant Williamson, individually. Compl. ¶¶ 2, 22-26. Before addressing the liability of Defendant Merchant Flow, the Court addresses Defendant Williamson's individual liability under the TCPA. "As a general matter, if a corporation is found to have violated a federal statute, its officers will not be personally liable solely because of their status as officers." *City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, No. 11-2658, 2017 WL 1170828, at *5 (D.N.J. Mar. 28, 2017), *aff'd*, 885 F.3d 154 (3d Cir. 2018). However, the following exceptions apply:

> [A]n individual acting on behalf of a corporation may, under certain limited circumstances, be held personally or individually liable for

> the corporation's violation of the TCPA if the individual: (1) had direct, personal participation in the conduct found to have violated the TCPA, or (2) personally authorized the conduct found to have violated the TCPA.

*Id.* "Thus, the personal liability of a corporate director or officer must be founded upon his active oversight of, or control over, the conduct that violated the TCPA, rather than merely tangential involvement." *Id.* Tangential involvement is "routine, passive or ministerial" involvement. *Id.* To illustrate, an individual defendant can be held liable under the TCPA for "set[ting] up the automatic telephone dialing systems and design[ing] them" to function unlawfully. *McGee v. Halsted Financial Services, LLC*, No. 13-1555, 2014 WL 1203138, at *1 (D. Del. Mar. 19, 2014).

Here, Plaintiff fails to plausibly demonstrate Defendant Williamson's direct and personal participation or authorization of the allegedly unlawful conduct. Plaintiff alleges that Defendant Williamson is personally liable "because he is the CEO and/or Principal owner of MERCHANT FLOW, knew of MERCHANT FLOW's violations, and directed employees and/or agents of MERCHANT FLOW to continue making those violations." Compl. ¶ 24. Plaintiff does not however provide any specific facts evidencing that Defendant Williamson "knew" of violations and/or "directed" employees to continue engaging in them. Instead, Plaintiff's allegations against Defendant Williamson appear to be inferred from Williamson's position as CEO and/or principal owner of Merchant Flow.

Plaintiff additionally alleges that "Defendant Mr. Williamson authorized and oversaw each of MERCHANT FLOW's telemarketing processes and calls," and "was responsible for ensuring MERCHANT FLOW's agents and/or employees' TCPA compliance." *Id.* ¶¶ 25-26. Again, Plaintiff does not allege with any specificity any instance where Defendant Williamson directed, authorized, or oversaw unlawful activity. Nor does Plaintiff provide any documentation indicating that Defendant Williamson was personally tasked with ensuring TCPA compliance. Again, all of

Plaintiffs allegations appear to be inferred from Defendant Williamson's position as CEO or owner of the company. Such extrapolations are insufficient to sufficiently establish Defendant Williamson's personal involvement in Merchant Flow's allegedly unlawful conduct. Therefore, the Court does not find that Defendant Williamson is individually liable.

### 2. Defendant Merchant Flow's Liability

Turning to Defendant Merchant Flow, Plaintiff seeks relief for violations of two sections of the TPCA, 47 U.S.C. §§ 227(b)(1)(A) and 227(c)(3)(F), and two sections of the FCC's accompanying regulations, 47 C.F.R. §§ 64.1200(d)(1) and 64.1200(d)(3). Compl. ¶¶ 62-81. The Court will first address the TCPA Sections.

First, Plaintiff alleges a violation of TCPA Section 227(b)(1)(A). *Id.* ¶ 63. Section 227(b)(1)(A) of the TCPA makes it unlawful for any person

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [ATDS]. . . to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

*Gager*, 727 F.3d at 268 (quoting 47 U.S.C. § 227(b)(1)(A)(iii)) (emphasis omitted). The TCPA defines ATDS to mean "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "In proving a defendant's use of ATDS under the TCPA, courts have recognized the difficulty a plaintiff faces in knowing the type of calling system the defendant used without the benefit of discovery." *Charkchyan v. EZ Capital, Inc.*, No. 14-03564, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015). Therefore, courts draw reasonable inferences as to the type of calling system given a plaintiff's allegations. *E.g., id.*; *Barnes v. Santander Consumer USA, Inc.*, No. 14-1941, 2015 WL 12777362, at *1 (N.D. Ohio June 15, 2015) (finding allegations

9

of an ATDS reasonable because plaintiff was met with a "period of silence before being transferred to one of defendant's representatives"); *Cunningham v. Greenstar Capital Sols.*, LLC, No. 18-161, 2018 WL 4572711, at *4 (E.D. Tex. Aug. 1, 2018), *report and recommendation adopted*, No. 18-161, 2018 WL 4567706 (E.D. Tex. Sept. 24, 2018) (finding allegations of an ATDS reasonable because of "long periods of silence before disconnecting," "seconds of dead air then an audible 'Bloop' type tone upon which a live agent was connected," and "local area code spoofing by using 615 numbers to call 615 numbers").

Second, Plaintiff alleges a violation of TCPA Section 227(c)(3)(F). *Id.* ¶ 69. Section 227(c)(3)(F) of the TCPA makes it unlawful for any person to make a "telephone solicitation" to any number listed on the national DNC registry. 47 U.S.C. § 227(c)(3)(F). Under the TCPA, a "telephone solicitation" is

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

*Orea*, 2015 WL 1885936, at *2. (quoting 47 U.S.C. § 227(a)(4)).

Importantly, both of these Sections do not impose liability when the Plaintiff gives "prior express consent" or "prior express invitation or permission" to be contacted. 47 U.S.C. §§ 227(b)(1)(A)(iii), (a)(4). If a plaintiff "consented to be called, no liability can attach under the TCPA." *Newhart v. Quicken Loans Inc.*, No. 15-81250, 2016 WL 7118998, at *2 (S.D. Fla. Oct. 12, 2016). "Prior express consent" is broadly construed: consumers "may give 'prior express consent' under the FCC's interpretations of the TCPA" simply by providing personal contact information to defendant. *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 346 (6th Cir. 2016);

*see also Williams v. Nat'l Healthcare Review*, No. 15-0054, 2017 WL 4819097, at *8 (D. Nev. Oct. 25, 2017) ("In this case, read in light of the public policy imperative at issue, the Court finds the consent of providing the number and other contact information sufficient to satisfy the TCPA as elaborated by the FCC."). Courts are to look to the surrounding circumstances to determine the reasonable scope of this consent or permission. *Williams*, 2017 WL 4819097, at *8.

Here, Plaintiff plausibly pleads one violation of TCPA Section 227(b)(1)(A) for Defendant Merchant Flow's first call to Plaintiff. Plaintiff has alleged sufficient facts for the Court to reasonably infer that Defendant Merchant Flow used an ATDS for the first call on May 21, 2018 because (1) the incoming call shared the same area code and first three digits as Plaintiff's number (indicative of "caller ID spoofing"), *Id.* ¶ 34; (2) upon answering the call, Plaintiff heard a "click" and a pause, *Id.* ¶ 35; (3) Plaintiff responded by repeatedly saying "hello," but received no response, *Id.* ¶ 36; and (4) Plaintiff then heard a "bloop" sound, before being transferred to a live human being, *Id.* ¶ 37. These allegations reasonably imply use of an ATDS.

Additionally, the outstanding elements of a Section 227(b)(1)(A) violation are met for this first call. Plaintiff's telephone number is serviced by T-Mobile and Plaintiff is charged for calls via an unlimited calling plan. Compl. ¶ 58, 59. The call was not made for emergency purposes; it was apparently made to generate business for Merchant Flow. *Id.* ¶ 40. Plaintiff never gave Defendant Merchant Flow his express consent to call him before this first call. *Id.* ¶ 50. In fact, Plaintiff took precautions *not* be contacted by telemarketers by registering his number on the DNC registry on June 26, 2015 – weeks before the first call. *Id.* ¶ 32. Therefore, the Court finds that Defendant Merchant Flow plausibly violated TCPA Section 227(b)(1)(A) by placing its May 21, 2018 ATDS call to Plaintiff.

The Court also finds that Plaintiff plausibly pleads one violation of TCPA Section 227(c)(3)(F) for Defendant Merchant Flow's first call to Plaintiff. Plaintiff's cell phone number is listed on the national DNC registry. Compl. ¶ 32. Plaintiff did not give Defendant Merchant Flow prior express permission to call him, nor did he have any prior business relationship with Defendant Merchant Flow, before this first call. *Id.* ¶¶ 49-50. Further, the May 21, 2018 call was made for the purpose of encouraging Plaintiff to purchase Merchant Flow's services. *Id.* ¶ 40. Therefore, the Court finds that Defendant Merchant Flow plausibly violated TCPA Section 227(c)(3)(F) by placing the May 21, 2018 telephone solicitation to Plaintiff's DNC registered number.

The Court, however, does not find Defendant Merchant Flow to have committed any additional violations of TCPA Sections 227(b)(1)(A) or 227(c)(3)(F) because during this first call, Plaintiff appears to have not only consented to, but invited, Defendant Merchant Flow's future contact. Plaintiff describes the May 21, 2018 call as an "attempt[] to sell the Plaintiff Merchant Flow's business loan and/or merchant cash advance services." Compl. ¶ 40. Plaintiff then admits that "[a]s a result of the automated call [on May 21, 2018], David W. Oliver, Jr., doliver@merchantflow.com, *contacted the Plaintiff by e-mail* attempting to get the Plaintiff to purchase Merchant Flow's loan services." Compl. ¶ 41 (emphasis added). The reasonable inference to be drawn from this allegation is that Plaintiff provided Defendant Merchant Flow with his personal contact information, his e-mail address, during the May 21, 2018 call. Plaintiff provides no other explanation as to how Merchant Flow obtained his e-mail address. Providing a company with one's email address during a sales call reasonably invites the company to contact the individual in the future about the services pitched on the sales call. Therefore, the Court finds that Plaintiff consented to and invited the remaining calls, barring Defendant Merchant Flow's

further liability under the TCPA for those additional calls. At a minimum, Plaintiff has not sufficiently established that he did not consent to the contacts following the first call until he sent the e-mail on June 17, 2018. After that day, Merchant Flow did not contact Plaintiff. Accordingly, the Court finds one violation of TCPA Section 227(b)(1)(A), and one violation of TCPA Section 227(c)(3)(F), both stemming from the May 21, 2018 call.

The Court next addresses Defendant Merchant Flow's liability for alleged violations of the FCC's accompanying regulations. Plaintiff alleges that Defendant Merchant Flow violated FCC Regulations 64.1200(d)(1) and 64.1200(d)(3). Compl. ¶¶ 74-81. FCC Regulation 64.1200(d) provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards[.]

47 C.F.R. § 64.1200(d). Included in the list of minimum standards are Regulations 64.1200(d)(1) and (d)(3). *Id.* Here, Defendant Merchant Flow initiated calls to Plaintiff for telemarking purposes as they were attempting to market Merchant Flow's business. Compl. ¶¶ 41, 42, 48. Further, Plaintiff's personal cell phone is a residential telephone – it is not primarily used for commercial purposes. *Id.* ¶ 59. Therefore, FCC Regulation 64.1200 applies, and the minimum standards of FCC Regulations 64.1200(d)(1) and (d)(3) must be met.

FCC Regulation 64.1200(d)(1) states as follows: "Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). Courts have interpreted this provision to mean that a plaintiff can recover for a telemarketer's calls made without an internal do-not-call policy, but not simply for a telemarketer's refusal to send plaintiff such policy. *E.g., Hamilton v.*

*Voxeo Corp.*, No. 07-404, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) ("Plaintiff cannot recover for United Health's refusal to send him its do-not-call policy. He can only recover for a call made at a time when United Health did not have such a policy in place[.]").

On June 17, 2018, Plaintiff e-mailed Defendant Merchant Flow requesting a copy of Merchant Flow's do-not-call policy. Pl. Aff. ¶ 7; D.E. 7-2 at 6. Defendant Merchant Flow never responded. *Id.* Plaintiff cannot recover simply for Defendant Merchant Flow's failure to send him the policy. Plaintiff must plausibly allege that Defendant Merchant Flow did not have an internal do-not-call policy while making calls to Plaintiff. However, according to Plaintiff's allegations, after he requested Defendant Merchant Flow to place him on their internal do-not-call list, he did not receive any further calls. Thus, it is not reasonable to infer that Defendant Merchant Flow did not have the internal list because they did in fact stop contacting Plaintiff. Plaintiff has not sufficiently plead a violation of FCC Regulation 64.1200(d)(1).

FCC Regulation 64.1200(d)(3) provides as follows:

> Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes . . . receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.

47 C.F.R. § 64.1200(d)(3). This regulation is violated when defendant calls plaintiff *after* plaintiff requests to be placed on its internal do-not-call list. *Charvat v. NMP, LLC*, 656 F.3d 440, 452 (6th Cir. 2011) (explaining that "Defendants' failure to maintain a record of Charvat's do-not-call request and failure to honor his request . . . caused a single injury—Charvat's receipt of calls after requesting to be placed on the do-not-call list.").

Here, Plaintiff has not reasonably plead a violation of FCC Regulation 64.1200(d)(3). Plaintiff e-mailed Defendant Merchant Flow on June 17, 2018, requesting that it place his number on an internal do-not-call list. Pl. Aff. ¶ 7. Plaintiff has not alleged that Defendant Merchant Flow has called him since this request. Therefore, the Court does not find that Plaintiff plausibly plead a violation of FCC Regulation 64.1200(d)(3) either.

**E. Damages**

While the factual allegations of the complaint are taken as true, the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted). Under the TCPA, a private party may bring "an action to recover for actual monetary loss from [a 47 U.S.C. § 227(b)] violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Similarly, "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection [47 U.S.C. § 227(c)]" may bring "an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5)(B). Each of these sections are then qualified by the following identical language:

> "If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

47 U.S.C §§ 227(b)(3)(C), (c)(5)(C) (referring to the two abovementioned subparagraphs).

Plaintiff sufficiently plead one violation of TCPA Section 227(b)(1)(A), and one violation of TCPA Section 227(c)(3)(F), both stemming from the May 21, 2018 call. The violation of TCPA Section 227(b)(1)(A) equates to $500 in damages. 47 U.S.C. § 227(b)(3)(B). The violation of

TCPA Section 227(c)(3)(F) does not equate to any damages because Plaintiff only received the single May 21, 2018 call in violation of that subsection within a twelve-month period. 47 U.S.C. § 227(c)(5)(B). The Court does not exercise its discretion to treble these damages for any knowing or willful conduct. Plaintiff has adequately proven $500.00 in damages.

### F. Default Judgment Factors

Before imposing the extreme sanction of default judgment, district courts must determine the appropriateness of default judgment by weighing "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). The Court therefore does not find any meritorious defenses in the record. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) ("The current record does not show any meritorious defenses. Because the Defendant did not respond, the Court cannot determine whether the Defendant had meritorious defenses that are not reflected in the record. The Court therefore finds that Defendants have no meritorious defense."). Plaintiff has been prejudiced by Defendant Merchant Flow's failure to respond by being prevented from prosecuting his case, engaging in discovery, and seeking relief in the normal course. *See Id.* (finding that "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion."). Finally, Defendant Merchant Flow's failure to answer evidences Defendant Merchant Flow's culpability in its default. *See Id.* As a result, the Court finds that default judgment is appropriate.

## III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment (D.E. 7) is granted in part and denied in part. The Court finds that Defendant Merchant Flow committed one violation of 47 U.S.C. § 227(b)(1)(A) and accordingly awards Plaintiff a sum of $500 in statutory damages from Defendant Merchant Flow. The Court additionally finds that Defendant Merchant Flow committed one violation of 47 U.S.C. § 227(c)(3)(F), but such violation does not result in damages. The remainder of Plaintiff's causes of action are dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: December 28, 2018

/s John Michael Vazquez
**John Michael Vazquez, U.S.D.J.**